# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 27, 2013

No. 12-51282
Summary Calendar

Lyle W. Cayce
Clerk

RODNEY MAESTAS,

Plaintiff-Appellant,

v.

APPLE, INCORPORATED,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:11-CV-852

Before STEWART, Chief Judge, and KING and ELROD, Circuit Judges

PER CURIAM:[*]

Plaintiff-Appellant Rodney Maestas ("Maestas") appeals the district court's summary judgment in favor of Defendant-Appellee Apple, Inc. ("Apple") with regard to Maestas's employment discrimination and retaliation claims, pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA") and the Texas Commission on Human Rights Act ("TCHRA"). *See* 29 U.S.C. § 623 (2006); Tex. Labor Code § 21.051 (2006). We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-51282

## I.

In 1999, Maestas was hired by Apple to the position of an Inside Account Executive in Apple's U.S. Education Sales Department in Austin, Texas. As an inside account executive, Maestas partnered with field account executives to develop sales of Apple products in the education market for grades kindergarten through 12. For the first eight years of his employment, Maestas received positive performance reviews. However, in September 2008, Maestas's colleagues and customers began to complain about him. Elaine Candelas, Maestas's direct supervisor, received complaints concerning his professionalism, demeanor with customers, and work performance. Maestas's colleagues and customers continued to complain throughout the year.

Beginning in 2009, Maestas's performance dropped in two areas—sale performance and call activity. Consequently, Candelas and Maestas met three times to discuss his work performance and placed him on an action plan—a preliminary step intended to assist Maestas in improving the quality of his work before Apple took formal disciplinary action. Later that year, Maestas continued to perform inadequately in sales results, work quality, customer relations, and call activity. Thus, Candelas placed Maestas on his first Documented Coaching Plan. The Plan specified that Maestas may be terminated if he failed to achieve the objectives in the Plan or demonstrate significant improvement. During this time period, Maestas requested a meeting with Bodie Nash, his Human Resources manager, and later met with Nash to discuss his recent interactions with Candelas. Teress Morimoto, Maestas's Human Resources representative, also emailed him a few weeks after the meeting, but Maestas never responded to the email.

While he was on the Documented Coaching Plan, Maestas was transferred to a new position Apple created—Area Sales Representative. Area Sales Representatives provide support to the sales department. Two other account

No. 12-51282

executives, Brian Luce and Laura Vencill, were transferred with Maestas. Although the new position had the same base pay, there was a different commission structure. Maestas's Documented Coaching Plan was suspended when he was transferred so Candelas could correlate the plan to his new position. However, one month later, Candelas placed Maestas on a second Plan. This second Plan provided an improvement period from November 30, 2009 to December 26, 2009 and set objectives for Maestas's attention to detail, customer relations, quality of work, and response time for assigned tasks. Similar to the first Plan, the second Plan noted that Maestas could be terminated if his performance problems persisted.

Candelas and Maestas met again in both January and February. During these meetings, Candelas told Maestas of the continued complaints about his work. In the February meeting, Candelas also stated that Apple's Human Resources Department was now involved. Additionally, Maestas was placed on a third Documented Coaching Plan with an improvement period of February 16, 2010 to March 31, 2010. This third Plan contained the same warning that Maestas could be fired. Nevertheless, Maestas continued to have problems with the quality of his work. Consequently, Candelas suggested to Human Resources that Maestas be terminated, and Maestas was fired on April 20, 2010.

After his termination, Maestas emailed Apple, alleging that he was fired because of age discrimination. Maestas then brought suit against Apple, contending that Apple violated both federal and state law by discriminating and retaliating against him because of his age. Apple moved for summary judgment, which the district court granted, dismissing all of Maestas's claims. Maestas timely appeals.

## II.

We review a district court's grant of summary judgment de novo. *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

No. 12-51282

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a fact issue is present, courts "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party . . . ." *Antoine*, 713 F.3d at 830 (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). However, there is no genuine issue of material fact "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 439 (5th Cir. 2011) (citing *Floyd v. Amite Cnty. Sch. Dist.*, 581 F.3d 244, 247 (5th Cir. 2009)).

### III.

On appeal, Maestas alleges both employment discrimination and retaliation claims under the ADEA and TCHRA. Specifically, he contends that his termination, transfer, and placement on the Documented Coaching Plan resulted from discrimination because of his age or retaliation for complaining about the alleged discriminatory conduct.

The ADEA makes it "unlawful for an employer to fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, under the TCHRA, "[a]n employer commits an unlawful employment practice if because of . . . age the employer fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with

No. 12-51282

compensation or the terms, conditions, or privileges of employment."[1] Tex. Lab. Code § 21.051 (2006).

A plaintiff may prove an employment discrimination claim with either direct or circumstantial evidence. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010). Once a plaintiff provides direct evidence that discriminatory animus was a factor in the employment decision, the defendant bears the burden of proving "that it would have taken the same action regardless of discriminatory animus." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252–53 (1989)). However, when an employment discrimination claim is based on circumstantial evidence, we evaluate the evidence using the burden-shifting framework set forth in *McDonnell Douglas Corp.* Under *McDonnell Douglas*, the "plaintiff . . . must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)). "If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual." *Id.* (citing *Jackson*, 602 F.3d at 378–79). Nonetheless, the ultimate

---

[1] Because the TCHRA follows the ADEA, we will analyze Maestas's claims under the ADEA in conjunction with his claims under the TCHRA. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) ("Section 21.051 is effectively identical to Title VII, its federal equivalent . . . . Because one of the purposes of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,' we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA."); *Farmer v. Halliburton Co.*, 281 F.3d 1279, *1 (5th Cir. 2001) (per curiam) (citing *Evans v. City of Houston, Tex.*, 246 F.3d 344, 348 (5th Cir. 2001) ("Claims of age discrimination under the ADEA and the Texas Commission on Human Rights Act are analyzed under the same analytical framework—the one announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).").

No. 12-51282

burden remains with the plaintiff. *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

## IV.

Maestas's age discrimination claim primarily focuses on four events:  1) his transfer;  2) his placement on Documented Coaching Plans;  3) his termination; and, 4) alleged discriminatory comments made by Candelas.  For his retaliation claim, Maestas also points to his transfer, placement on Documented Coaching Plans, and termination.  In addition, Maestas contends that his inability to transfer to another desired position was the result of retaliation.  We will address each argument separately.

Maestas has failed to establish a prima facie case of age discrimination based on his transfer.  An age discrimination claim requires that Maestas demonstrate that he: 1) suffered an adverse employment action; 2) was qualified for the position; 3) was within the protected class when the adverse action occurred; and, 4) was replaced by someone younger or outside the protected class, treated less favorably than a similarly situated younger employee, or otherwise discharged because of his age.  *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003) (citing *Sandstad*, 309 F.3d at 897).

A transfer is an adverse employment action "if the change makes the job 'objectively worse.'" *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004) (quoting *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 770 (5th Cir. 2001)).  A party's subjective belief that the transfer is detrimental, by itself, is insufficient.  *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999);  *see also Alvarado v. Tex. Rangers*, 492 F.3d 605, 614 (5th Cir. 2007) (citation omitted).  Furthermore, purely lateral transfers do not constitute adverse employment actions.  *Burger*, 168 F.3d at 879 (quoting *Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1450 (11th Cir. 1998)).  "A transfer involving no

reduction in pay and no more than a minor change in working conditions will not do, either." *Id.* (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)).

Maestas provides insufficient evidence that his transfer was an adverse employment action. To support this argument, Maestas relies, in part, on his perception that his transfer was a demotion. As stated above, Maestas's subjective belief does not transform a non-detrimental transfer into an adverse employment action. At the most, Maestas's transfer involved minor changes in his working conditions, but they did not become "objectively worse."[2] Maestas received the same compensation in his new position as he did in his former role. Maestas primarily contends that his transfer has cost him the opportunity to make the same amount he would have made in his old position; however, he fails to provide adequate summary judgment evidence in support of this argument. Maestas's claim that the transfer has caused him to lose thousands of dollars is unavailing as he fails to provide any objective evidence to support his deposition testimony. *See In re Moye*, 486 Fed. Appx. 485, 488 (5th Cir. 2012) (per curiam) (quoting *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997)) (internal quotation marks omitted) ("[U]nsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat the motion for summary judgment."). To the contrary, Maestas acknowledges there has been minimal impact on his salary on account of the transfer. He alleges only the mere possibility of a loss, which is insufficient. *Cf. Pegram*, 361 F.3d at 284 (noting that transfer was not merely

---

[2] Whereas his former role dealt primarily with sales, his new position had more of an administrative and support role. However, any argument regarding the change in Maestas's responsibilities and nature of work are waived because he failed to raise the issue below. *See XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008) (citing *Stokes v. Emerson Elec. Co.*, 217 F.3d 353, 358 n. 19 (5th Cir. 2000)) ("An argument not raised before the district court cannot be asserted for the first time on appeal.").

lateral when the old position had "potential to earn a considerable amount of incentive pay" but the new position was more limited). Accordingly, the district court did not err in finding that Maestas's transfer did not constitute a prima facie case of discrimination under the ADEA.

Similarly, Maestas has failed to establish a prima facie case of age discrimination based on his placement on Documented Coaching Plans. Maestas has not provided sufficient evidence that Apple treated him less favorably than a similarly situated younger employee by placing him on the plan. There must be "'nearly identical' circumstances for employees to be considered similarly situated." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007) (quoting *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 210 (5th Cir. 2004)). Maestas has not identified another employee that shared "nearly identical circumstances" with him. Instead, he identified two co-workers who did not share the same work performance issues he did. Such a comparison falls short of the "nearly identical" circumstances standard. Therefore, summary judgment was proper on Maestas's age discrimination claim arising from his placement on Documented Coaching Plans.

Maestas also attempts to create a prima facie case of discrimination on account of his termination. Although his termination is an adverse employment action, Maestas has failed to show that he was replaced by a younger employee or person outside of the protected class, treated less favorably than a similarly situated younger employee, or otherwise discharged because of his age.[3] *See Pegram*, 361 F.3d at 282 (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir.

---

[3] Maestas contends that the district court erred by requiring that he present direct evidence of discrimination once he failed to demonstrate that he was replaced by a younger employee. This argument is without merit as nothing in the record suggests that the court imposed such a requirement. Nevertheless, Maestas is unable to establish a prima facie case on any of the theories he claims the district court erroneously disregarded.

2002) ("[A]n adverse employment action consists of '*ultimate employment decisions* such as . . . discharg[es] . . . .'").

The record does not support Maestas's contention that Apple hired someone to replace him. Rather, Apple instead chose to reallocate Maestas's job duties among other workers. While Apple has hired account sales representatives since Maestas was fired, there is no evidence that they were hired to replace Maestas or that they are younger than Maestas. Moreover, there is no similarly situated employee who compares to Maestas because of Maestas's multiple work-related deficiencies. Likewise, Maestas has not produced any evidence suggesting that his discharge was because of his age. In an attempt to prove that his termination was due to his age, Maestas contends that Candelas directed his co-workers to look for Maestas's mistakes. However, this argument is unpersuasive and unsupported by the record.

Maestas also alleges that comments made by Candelas provide direct evidence of age discrimination. A statement constitutes sufficient evidence of age discrimination if it is: "1) age related, 2) proximate in time to the employment decision[,] 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 683 (5th Cir. 2001) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655–56 (5th Cir. 1996)).[4] A comment demonstrates an employer's discriminatory intent if it is "direct and

---

[4] For the first time on appeal, Maestas argues that Candelas's comments should be analyzed under the framework for circumstantial evidence as well. Consequently, this argument is waived. *See XL Specialty Ins. Co.*, 513 F.3d at 153 (citing *Stokes*, 217 F.3d at 358 n.19). Even assuming this argument was not waived, the circumstantial evidence standard is inapplicable here because Maestas is not attempting to prove pretext or present additional evidence of discrimination. *See Laxton v. Gap, Inc.*, 333 F.3d 572, 583 (5th Cir. 2003) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000)) ("An oral statement exhibiting discriminatory animus may be used to demonstrate pretext, or as is the case here, it may be used as additional evidence of discrimination."). Instead, Maestas is attempting to establish a prima facie case.

unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010) (citing *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)).

None of Candelas's comments are sufficient evidence of age discrimination. On Maestas's forty-fifth birthday, Candelas said, "You're 45? Wow, that's old? [sic]" Maestas also contends that Candelas teased him about his grey hair. Additionally, during a meeting with Maestas, Candelas stated, "You have been doing this job for a really long time. Are you sure you still want to do this. [sic]" While the first two statements are age related, they are not related to the employment decision at issue and are consequently insufficient evidence of discrimination. Even viewing the evidence in the light most favorable to Maestas, the last statement is not age related. The comment was made during a meeting to discuss Maestas's lackluster performance at work. Even assuming that the statement was related to Maestas's age, it certainly is not "direct and unambiguous" as a reasonable jury could interpret the statement as referring to the decline in the quality of Maestas's work. *See Moss*, 610 F.3d at 929. Accordingly, Candelas's comments are not direct evidence of age discrimination.

Finally, Maestas has failed to present competent summary judgment evidence of the essential elements of a proper retaliation claim. To establish a retaliation claim, Maestas must provide sufficient evidence that "1) he engaged in protected activity, 2) he suffered an adverse employment decision, and[,] 3) a causal link exists between the protected activity and the adverse employment decision." *Medina*, 238 F.3d at 684 (citing *Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)). After a prima facie case is established, the burden shifts from the plaintiff to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment decision at issue. *Id.* (citing Long, 88 F.3d at 305). If the defendant successfully asserts a legitimate

No. 12-51282

nondiscriminatory reason, the burden shifts back to the plaintiff to produce evidence that the reason is mere pretext. *Id.* at 685 (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)). Plaintiff must prove that "the adverse employment action would not have occurred 'but for' the protected activity." *Id.* Maestas contends that Apple retaliated against him when he was placed on Documented Coaching Plans, transferred, prevented from transferring to another position, and terminated. We agree with the district court that, even if Maestas could establish a prima facie case of retaliation, Apple has provided sufficient evidence of its legitimate nondiscriminatory reason for its actions—namely, Maestas's work performance issues.

## V.

For the foregoing reasons, the district court's summary judgment in favor of Apple is AFFIRMED.